IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Case No. 04-cv-01423-WDM-BNB

JAMES D. CUNNINGHAM,

Plaintiff,

v.

TOM RIDGE,
JOHN ASHCROFT,
DAVID M. STONE,
JAMES LOY,
RENE DHENIN,
RALPH HAMBLIN,
LINDA LANGLEY,
RON DEGAUS,
ELLIE VASCONEZ,
STEVE GILLMOR,
THOMAS MULHERN,
MARTINA GRIGGS JOHNSON,
CAROLYN WILLIAMS,
VELMA WILEY,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Motion to Dismiss** filed by defendants Hamblin, Dhenin,

DeGaus, Langley, Vasconez, and Gilmore[1] in their individual and official capacities, and

defendants Ridge, Ashcroft, Stone, Loy, Williams, Johnson, Mulhern, and Wiley, in their official

---

[1] The defendants assert, and the plaintiff does not dispute, that defendant Steve Gillmor's last name is correctly spelled "Gilmore." Therefore, I will refer to the defendant as Steve Gilmore.

capacities[2] (the "Motion"), filed March 25, 2005.  For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED.

## I.  BACKGROUND

The plaintiff filed his Complaint on July 12, 2004.  The Complaint describes the defendants as "all Transportation Security Administration and a subsidiary Corporation under U.S. DEPARTMENT OF HOMELAND SECURITY."  *Complaint*, tenth consecutive page.

The Complaint contains the following allegations:

1.  The plaintiff began employment with the Transportation Security Administration ("TSA") in October 2002.  Id. at ¶ 30.  After initial training, he reported to duty at the Walker Field Airport in Grand Junction.  Id. at ¶ 31.

2.  On June 13, 2003, the plaintiff was screening a bag and failed to locate a pocket knife.  Id. at ¶ 36.  The plaintiff was placed on administrative leave on June 16, 2003.  Id. at ¶ 38.  Two weeks later, he was wrongfully terminated for falsifying his employment application.  Id. at ¶¶ 39-40.  The letter of termination questioned the plaintiff's honesty and suitability to work for the United States government.  Id. at ¶ 48.  The plaintiff is now banned from all TSA facilities.  Id.

3.  The plaintiff took several measures to attempt to correct his wrongful termination.  Id. at ¶¶ 49-56.  He subsequently received conflicting messages regarding whether he was reinstated at TSA.  Id. at ¶ 57.  TSA sent special agents to the plaintiff's home to harass, intimidate, and

---

[2]The defendants assert that no response is being filed on behalf of defendants Ridge, Ashcroft, Stone, Loy, Williams, Johnson, Mulhern, and Wiley, in their individual capacities because they have not been properly served.  This issue is addressed in an order to show causes, issued contemporaneously.

threaten him.  Id. at ¶ 59.  On May 28, 2004, he received a letter which stated that he was terminated for failing to locate the pocket knife in June 2003.  Id.

The Complaint asserts four claims.  Claim One alleges that the defendants have violated and are still violating the plaintiff's Fifth Amendment rights because they failed to allow him to prove his innocence and because they are barring him from TSA facilities.  Claim Two alleges that the defendants violated the plaintiff's Seventh Amendment rights when they failed to provide him with a hearing prior to his wrongful termination.  Claim Three alleges that the defendants knowingly deprived the plaintiff of his right to prove his innocence in violation of the First Amendment.  Claim Four (inaccurately entitled "Count VI") alleges that the defendants conspired to deprive the plaintiff of his rights under the Constitution, TSA and Homeland Security policies and regulations, and various other federal statutes.  Id. at nineteenth and twentieth consecutive pages.

The plaintiff seeks monetary damages and "Sanctions, in the most stringent available to this Honorable Court."  Id. at ¶¶ 70-67.  The defendants seek dismissal of the claims against them pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## II.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the

plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief.  Id.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

### III.  ANALYSIS

The plaintiff lists several jurisdictional bases including 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity); 11 U.S.C. § 101(5)(a) (the Bankruptcy Code's definition of "claim"); and the Foreign Sovereign Immunities Act of 1961.  *Complaint*, sixth and seventh consecutive pages.  A plaintiff's private right of action against federal agents for constitutional violations was judicially created in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction under 28 U.S.C. § 1331.  Farmer v. Perrill, 275 F.3d 958, 960 n.4 (10th Cir. 2001); Kite v Kelley, 546 F.2d 334, 337 (10th Cir. 1976). Consequently, I construe the plaintiff's constitutional claims as Bivens claims.

### A.  Sovereign Immunity

The defendants assert that sovereign immunity bars the plaintiff's claims against them in their official capacities.  The defendants are asserting a facial attack on the Complaint's allegations as to subject matter jurisdiction.  Therefore, I accept the allegations of the Complaint as true.

It is a well-established principle that "[a]s a sovereign, the United States 'is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'"  Lee v. United States, 980 F.2d 1337, 1340 (10th Cir. 1992) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  "Sovereign immunity protects the United States against judgments that would require an expenditure from public funds, that interfere with public administration or that would restrain the Government from acting, or to compel it to act." (quotations and citations omitted).  Hensel v. Office of the Chief Administrative Hearing Officer, 38 F.3d 505, 509 (10th Cir. 1994).  Sovereign immunity is a jurisdictional bar to

suit. Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475 (1994). Bivens does not waive sovereign immunity. Meyer, 510 U.S. at 484-86; Bivens, 403 U.S. at 410.

Suits against officers in their official capacities are suits against the entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The Complaint states that the defendants are "all Transportation Security Administration and a subsidiary Corporation under U.S. DEPARTMENT OF HOMELAND SECURITY." *Complaint*, tenth consecutive page. Therefore, suits against the defendants in their official capacities are suits against the Department of Homeland Security, which is a federal agency. Sovereign immunity shields the Federal Government and its agencies from suit. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999).

The plaintiff's claims against the defendants in their official capacities are barred by sovereign immunity. The Motion to Dismiss should be GRANTED insofar as it seeks dismissal with prejudice the claims against the defendants in their official capacities.

### B.  Civil Service Reform Act

The defendants assert that, to the extent the plaintiff is alleging constitutional claims against the defendants in their individual capacities, the Civil Service Reform Act ("CSRA") precludes the claims. The Tenth Circuit Court of Appeals has explained the interplay between the CSRA and Bivens claims:

> In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court, for the first time, refused to recognize a *Bivens* remedy for unconstitutional activities in federal personnel decisions. Holding that the plaintiff was limited to the remedial scheme of the CSRA, the Court explained:

> "Federal civil servants are now protected by an elaborate comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures--administrative and judicial--by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies. Constitutional challenges to agency action . . . are fully cognizable within this system." *Id.* 462 U.S. at 385-86, 103 S.Ct. at 2414-15.
>
> The Court recently reiterated its cautious approach to extending *Bivens* remedies into new contexts in *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). There the Court declined to provide a *Bivens* remedy for social security claimants challenging the termination of their benefits. The Court stated that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.* at 423, 108 S.Ct. at 2467.

Petrini v. Howard, 918 F.2d 1482, 1483-84 (10th Cir. 1990).

The plaintiff in Petrini brought a First Amendment claim against her employer for failing to renew her employment contract. Id. at 1483. The plaintiff claimed that her employer failed to renew her contract in retaliation for her expressing concerns about employment conditions. Id. The Tenth Circuit determined that the plaintiff's claim was a "prohibited employment practice" within the meaning of the CSRA and determined that "since the CSRA accommodates plaintiff's constitutional challenge, creation of a *Bivens* remedy for her is unwarranted." Id. at 1484.

The defendants' argument in support of their assertion that the CSRA preempts the plaintiff's claims is limited to the following:

> To the extent the plaintiff is asserting his constitutional claims for monetary damages against Defendants in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Civil Service Reform Act provides the exclusive remedy for his claims and is a special factor

> that precludes a damages remedy for constitutional violations. *Bush v. Lucas*, 462 U.S. 367, 388-89 (1983); *Steele v. United States*, 19 F.3d 531, 532-33 (10th Cir. 1994); *Petrini v. Howard*, 918 F.2d 1482, 1483-84 (10th Cir. 1990).

*Motion*, p. 2, ¶ 3.

The CSRA provides a comprehensive list of "prohibited personnel practices." 5 U.S.C. § 2302. The defendants do not provide any meaningful discussion of the plaintiff's claims as compared to the CSRA's "prohibited personnel practices." The cases cited by the defendants do not clarify the defendants' position; the cases analyze claims which are different from the plaintiff's claims.

It is not my responsibility to search the CSRA for provisions which support the defendants' argument. See Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995). The litigants' must provide the court with concise arguments, relevant facts, and specific citations to authorities and supporting evidence. Toth v. Gates Rubber Co., 2000 WL 796068, *8 (10th Cir. 2000). Consequently, the Motion should be DENIED insofar as its seeks dismissal of defendants Hamblin, Dhenin, DeGaus, Langley, Vasconez, and Gilmore in their individual capacities.

## IV.   CONCLUSION

I respectfully RECOMMEND that the Motion to Dismiss be GRANTED IN PART and DENIED IN PART as follows:

1.     GRANTED to the extent it seeks dismissal of all claims against defendants Hamblin, Dhenin, DeGaus, Langley, Vasconez, Gilmore, Ridge, Ashcroft, Stone, Loy, Williams, Johnson, Mulhern, and Wiley, in their official capacities; and

2. DENIED to the extent it seeks dismissal of any claims against defendants Hamblin, Dhenin, DeGaus, Langley, Vasconez, and Gilmore in their individual capacities.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 5, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge